IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOUSTON CASUALTY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LR DEVELOPMENT COMPANY LLC dba RELATED MIDWEST; GRANT PARK CHICAGO SYNDICATED HOLDINGS II, LLC; and MUSEUM PARK PLACE SOUTH CONDOMINIUM ASSOCIATION, | ) Case No. |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Houston Casualty Company ("HCC"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Defendants LR Development Company LLC dba Related Midwest ("RM"), Grant Park Chicago Syndicated Holdings II, LLC ("Grant Park"), and Museum Park Place South Condominium Association (the "Association") (collectively, the "Defendants"), alleges as follows:

## NATURE OF THE CASE

1. This is an action for declaratory judgment and other relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of resolving an actual controversy between the parties regarding the rights and obligations arising under a Commercial General Liability "Wrap-Up" Policy that HCC issued to Grant Park. In particular, HCC seeks a declaration that it owes no defense or indemnity obligation under the subject insurance policy with respect to RM's alleged liability in an underlying civil lawsuit pending in the Circuit Court of Cook County, Illinois, Law

Division, styled *Museum Park Place South Condominium Association v. LR Development Company, LLC d/b/a Related Midwest, et al.*, Case No. 16 L 11770 (the "Underlying Lawsuit").

## THE PARTIES AND CITIZENSHIP

2. HCC is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas, and it is authorized to transact the business of insurance within the State of Illinois.

3. Upon information and belief, RM is an Illinois limited liability company, with its principal place of business in Chicago, Illinois. RM's members, and its members' members, are believed to all be citizens of states other than Texas. In particular, RM's membership hierarchy is as follows:

- LRD Group LLC is a Delaware limited liability company with its principal office in Chicago, Illinois. Its sole member is:
    - Donald Biernacki (an Illinois resident).
- Related LR Development LLC is a Delaware limited liability company with its principal office in New York, New York. Its two members are:
    - The Related Companies, L.P. (a New York limited partnership with its principal office in New York, New York); and
    - Yukon Holdings, L.L.C. (a Delaware limited liability company with its principal office in New York, New York), whose sole member is:
        - Jeff Blau (a New York resident).
- Curt Bailey (an Illinois resident).

4. Upon information and belief, Grant Park is a Delaware limited liability company, with its principal place of business in New York, New York. Grant Park's sole member is Bank

of America N.A., which is a national association believed to have its principal office in Charlotte, North Carolina. Grant Park is authorized to do business in Illinois and does, in fact, conduct business in the State of Illinois.

5. Upon information and belief, the Association is registered as an Illinois not-for-profit corporation located in Chicago, Cook County, Illinois, and it conducts business exclusively within Cook County, Illinois. The Association is a necessary party to this action under applicable Illinois law, and is joined as a defendant to ensure that the Association is bound by the judgment rendered herein.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 2201 and 2202, insofar as HCC seeks a declaration of its rights and duties under the insurance policies at issue. Jurisdiction is also conferred by 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred within this district and the Underlying Lawsuit is pending within this district. In addition, Defendants have sufficient minimum contacts with this District to confer personal jurisdiction over them in this Court.

## THE UNDERLYING LAWSUIT

8. On or about December 2, 2016, the Association filed a Complaint at Law in the Circuit Court of Cook County, Illinois, Law Division, styled *Museum Park Place South Condominium Association v. LR Development Company, LLC d/b/a Related Midwest, et al.*,

Case No. 16 L 11770. (A true and correct copy of the Association's First Amended Complaint ("FAC"), filed April 27, 2017, is attached hereto as Exhibit 1, without exhibits.)

9. The FAC names RM and Grant Park as defendants, among other defendant parties.

10. In the FAC, the Association alleges that Museum Park Place South Condominiums a/k/a Harborview Condominiums is a development comprised of 288 condominium units, parking, and various common areas and amenities located at 1901 South Calumet Avenue, Chicago, Illinois (the "Property").

11. The Association alleges that, on or around August 22, 2012, Grant Park purchased 159 of the 228 total units of the Property for resale, and Grant Park also acted as successor developer in that it continued developing and constructing the Property.

12. The Association alleges that Grant Park's successor developer activities include, without limitation, completed construction on units, completed construction to common elements, and added common amenities. The Association further alleges that Grant Park's successor developer construction activities caused damage to common areas of the Property.

13. The Association alleges Grant Park hired RM to perform services related to the Property, including property management, marketing of Grant Park-owned units, and facilitating sales of Grant Park-owned units. In this capacity, RM allegedly provided sales documents and information to prospective purchasers, answered prospective purchaser inquires, and made material representations to purchasers (as marketer and sales representative) and to actual purchasers (as property manager) about the condition of the Property.

14. According to the FAC, one of the material representations that RM allegedly made to a large number of prospective purchasers and actual purchasers was that the damage to

4

common elements caused by Grant Park's "successor developer construction activities" would be repaired by Grant Park after construction was complete, and that the common elements would be completely refurbished.

15. The Association alleges that certain employees, members, or agents of RM (among other defendants) comprised the Developer Board, which governed, administered, and controlled the business of the Association until turnover to the unit owners on or about March 18, 2014.

16. The Association alleges the Developer Board had the exclusive obligation and right to maintain the property, and had exclusive access to certain aspects of the Property, and to construction documents, engineering reports, repair records, and similar documents and information. The Association further alleges that, for this reason, the defects in the Property were not discovered, and reasonably could not have been discovered, prior to turnover.

17. Each of the defects listed in the FAC was allegedly known, or reasonably could have been discovered by the Developer Board in its capacity as the Board of Directors, and/or by RM in its capacity as marketing and sales agent and as the property manager. However, RM allegedly never disclosed the existence of any of the defects to the Association or to prospective purchasers of condominium units at the Property.

18. Three causes of action are specifically pled against RM:

    Count III    Promissory Estoppel

    Count IV    Breach of the Illinois Consumer Fraud Act

    Count V    Breach of Fiduciary Duty

19. With respect to Count III, the Association alleges that RM made an unequivocal promise to purchasers of condominium units that all damage caused to common elements from

5

construction activities would be repaired. Such promises were allegedly made by RM in its capacity as a marketing entity for units within the Property, and as a property manager for the Association. Association members allegedly relied on RM's promises to their detriment, in that they have suffered damages and losses in the form of past and future cost to repair, remediate, and replace the damage to the common areas of the Property.

20. In Count IV, the Association alleges RM knew about the defects at the time it was holding out units for sale, that RM and Grant Park engaged in a joint venture to sell units at the Property which they knew included substantial defects, and that RM did not disclose the existence of the defects to any potential unit purchasers.

21. In Count IV, the Association further alleges that RM made affirmative representations to prospective purchasers which it knew to be false when it made them. Specifically, RM is alleged to have falsely represented that the units offered and marketed for sale were free of defects, and that common expense and reserve funds were sufficient to pay for repairs to known damage or defective conditions around the Property.

22. In Count IV, the Association characterizes RM's failure to disclose known defects as a deceptive act or practice by concealment or omission of a material fact.

23. The Association further alleges in Count IV that RM, as the marketing entity, intended that potential purchasers rely on the concealment of the known defects in deciding to purchase a unit at the Property, and intended that potential purchasers rely on its affirmative false statements about the physical condition of the Property and the financial condition of the Association.

24. The Association further alleges in Count IV that potential purchasers relied to their detriment on RM's concealment and misstatements and would not have purchased their

6

units if not for the concealment and misstatements. According to the Association, such concealment of known defects by, and the affirmative false statements of, RM were allegedly in bad faith.

25. Finally, as to Count V, the Association alleges that RM and the Developer Board (which is comprised of certain agents of RM) owed a fiduciary duty of care to the Association and to all unit owners to act and deal with them with fidelity, loyalty, care, and good faith.

26. In Count V, the Association alleges that the Developer Board put the interests of RM above the interests of the Association and its members, knowing that the Association and its members would suffer consequences of the defects, and would be damaged.

27. The Association further alleges in Count V that the Developer Board failed to establish a sufficient reserve account to address costs it knew the Association would necessarily incur to remediate the defects and failed to turn over all documents and information to the owner board upon turnover.

28. The Association further alleges in Count V that, as a result of the Developer Board's breach of fiduciary duties, which are described as "willful and wanton," the Association and its members have been damaged.

## HCC'S PRELIMINARY CLAIMS-HANDLING WITH RESPECT TO RM

29. On October 17, 2017, HCC, through its third-party claims administrator, Network Adjusters, Inc., sent a tender inquiry to RM advising RM that, in the course of examining HCC's potential indemnity obligation to Grant Park with respect to Grant Park's indemnity obligation to RM, HCC determined that RM may qualify as an "insured" under the HCC policy given its role as real estate manager of the Property.

30. On November 13, 2017, RM, through counsel, responded to the tender inquiry and demanded that HCC provide defense and indemnity to RM regarding the claims asserted in the Underlying Lawsuit.

31. On or about March 6, 2018, HCC, through Network Adjusters, Inc., sent a letter to RM disclaiming coverage for the Underlying Lawsuit.

32. An actual, present, and justiciable controversy has arisen and now exists between HCC, RM, and Grant Park regarding their respective rights, duties, and obligations under the subject HCC policy, including whether HCC has any defense or indemnity obligations thereunder based on the facts alleged in the Underlying Lawsuit.

## THE HCC POLICY

33. HCC issued "Wrap-Up" Policy No. H12PC30079-00 to Grant Park and two other Grant Park entities (Grant Park Chicago Syndicated Holdings, LLC and Grant Park Chicago Syndicated Holdings III, LLC) for the policy period June 21, 2012 to June 21, 2014 (the "HCC Policy"). (A true and correct copy of the HCC Policy is attached hereto as Exhibit 2.)

34. The HCC Policy provides Commercial General Liability insurance under ISO Form CG 00 01 12 07, and contains annual liability limits of $2 million each occurrence, $4 million general aggregate, and $4 million products-completed operations aggregate, subject to a $50,000 deductible each occurrence which reduces the stated limits.

35. The Insuring Agreement of the HCC Policy, as modified by the Wrap-Up Program Change Endorsement, provides the following, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

   \* \* \*

   b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "covered project."

   \* \* \*

36. The insurance under the HCC Policy does not apply to:

   b. **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   (1) That the insured would have in the absence of the contract or agreement; or

   (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

9

      **(b)**      Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*   *   *

37. The HCC Policy defines the term "property damage" as:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

38. The HCC Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

39. The HCC Policy defines "covered project" as "the project described in this [Wrap Up Program Change] endorsement." The endorsement lists the address of the project at issue in the Underlying Lawsuit.

40. The Policy contains an endorsement titled "EXCLUSION—REAL ESTATE AGENTS OR BROKERS ERRORS OR OMISSIONS," which states, in pertinent part:

> This insurance does not apply to … "property damage" … arising out of any misrepresentation, error or omission by [Grant Park] or any real estate agent or broker who is either employed by [Grant Park] or performing work on [Grant Park's] behalf in such capacity.

**COUNT I – DECLARATORY RELIEF**
**(No Damages Sought Against RM Because of "Property Damage")**

41. HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

42. In the Underlying Lawsuit, the Association does not seek damages against RM because of "property damage," as such term is defined in the HCC Policy.

43. To the contrary, the claims against RM arise from concealment of facts and affirmative false misrepresentations of fact, which forced the Association and its members to incur costs to correct, repair, remediate, and replace the damage caused by the defects to the Property.

44. HCC has no duty to defend or indemnify RM in connection with the Underlying Lawsuit under the HCC Policy on this basis.

## COUNT II – DECLARATORY RELIEF
### (The Allegations against RM Do Not Involve an "Occurrence")

45. HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

46. Even if the Association is deemed to seek damages against RM because of "property damage," such "property damage" must be caused by an "occurrence" in order to trigger coverage.

47. The claims against RM are generally that RM marketed the Property in bad faith by: (1) making false promises regarding the replacement and repair of common elements upon the completion of construction activities; (2) concealing material facts and making false affirmative statements regarding the condition of the Property in violation of the Illinois Consumer Fraud Act; and (3) breaching a fiduciary duty owed to the Association and its members in this respect.

48. None of the above-stated allegations against RM with respect to any of the three causes of action against it involve accidental or negligent conduct and, therefore, do not involve an "occurrence."

49. HCC has no duty to defend or indemnify RM in connection with the Underlying Lawsuit under the HCC Policy on this basis.

### COUNT III – DECLARATORY RELIEF
### (Coverage is Barred by the Real Estate Agents or Brokers Errors or Omissions Exclusion)

50. HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

51. By endorsement, the HCC Policy provides that the insurance expressly does not apply, in relevant part, to "property damage" arising out of any misrepresentation, error or omission by Grant Park or any real estate agent or broker who is either employed by Grant Park or performing work on Grant Park's behalf in such capacity.

52. RM, as exclusive sales and marketing agent of all units owned by Grant Park at the Property, served in the capacity of real estate broker.

53. All liability sought to be imposed against RM arises out of its misrepresentations, errors, or omissions, which forced the Association and its members to expend various sums.

54. To the extent "property damage" caused by an "occurrence" is implicated in the claims against RM (which is disputed), the Real Estate Agents or Brokers Errors or Omissions Exclusion applies to bar coverage in its entirety.

### COUNT IV – DECLARATORY RELIEF
### (No Duty to Indemnify Grant Park for Sums for which
### Grant Park is Obligated to Indemnify RM)

55. HCC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

56. On April 26, 2012, Grant Park and RM entered into an Asset Management, Property Management, and Sales Agreement for purposes of engaging RM to serve as the sole and exclusive asset manager, property manager, and sales agent for the Property (the "Management Agreement").

12

57. By letter dated February 14, 2017, RM demanded, pursuant to the Management Agreement, that Grant Park provide it with indemnity for all defense costs and attorneys' fees incurred defending against the claims asserted in the Underlying Lawsuit.

58. By email dated August 17, 2017, Grant Park demanded that HCC provide insurance coverage for RM's claim for indemnity pursuant to the exception to the Contractual Liability exclusion under the HCC Policy.

59. HCC would have a corresponding duty to indemnify Grant Park for amounts that Grant Park pays to RM for defense and indemnity only if such costs are incurred in a suit in which damages to which the insurance applies are alleged.

60. Because there is no coverage available to RM for the claims asserted in the Underlying Lawsuit, HCC has no duty to indemnify Grant Park for any amounts that Grant Park pays to RM for defense and indemnity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Houston Casualty Company respectfully requests that this Court enter judgment in its favor, and against all Defendants, as follows:

(a) Declaring that HCC owes no duty to defend or indemnify RM under the HCC Policy with respect to the Underlying Lawsuit;

(b) Declaring that HCC owes no duty to indemnify Grant Park for any sums paid by Grant Park to RM for defense and indemnity relating to the Underlying Lawsuit;

(c) Awarding HCC its attorneys' fees, costs, and disbursements in prosecuting this action; and

(d) Granting HCC any other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Houston Casualty Company hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated:  March 6, 2018                              Respectfully submitted,


                                                   /s/ Jordon S. Steinway
                                                   Robert J. Bates, Jr.
                                                   Jordon S. Steinway
                                                   BATESCAREY LLP
                                                   191 North Wacker, Suite 2400
                                                   Chicago, Illinois 60606
                                                   Telephone:  (312) 762-3169
                                                   Email:  jsteinway@batescarey.com
                                                   Email:  rbates@batescarey.com

                                                   *Counsel for Houston Casualty Company*

12244.1866410